UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STOCKBRIDGE-MUNSEE
COMMUNITY,

        Plaintiff,

   -against-           3:86-CV-1140 (LEK/DEP)

STATE OF NEW YORK; *et al.*,

        Defendants.

---

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

Plaintiff Stockbridge-Munsee Community ("Plaintiff"), a federally recognized Native American tribe, commenced this action on October 15, 1986. See Dkt. No. 1. In its Amended Complaint, filed on August 5, 2004, Plaintiff asserts claims under federal common law, 25 U.S.C. § 177 ("Nonintercourse Act"), and the 1794 Treaty of Canandaigua seeking possession of roughly thirty-six square miles of land in the State of New York and related damages. See Dkt. No. 228 ("Amended Complaint") ¶¶ 4, 12, 45-52. Now before the Court are three Motions to dismiss filed by, respectively: (1) Defendant-Intervenor the Oneida Indian Nation of New York ("Oneidas"); (2) Defendants the State of New York, the Governor of New York, the New York State Department of Transportation, and the New York State Commissioner of Transportation ("State Defendants"); and (3) the remaining Defendants, comprising two counties, five towns, and one village in the State of New York ("County-Municipal Defendants"; collectively with the State Defendants, "Government Defendants"). Dkt. Nos. 231 ("Oneida Motion"); 232 ("State Motion"); 291 ("County-Municipal Motion"; collectively with the State Motion, "Government Motions"). For the following reasons,

the Court grants the Motions and dismisses Plaintiff's claims.

## II.  BACKGROUND[1]

Plaintiff's primary reservation and principal situs are in the State of Wisconsin, but it claims that a 36-square-mile tract ("New Stockbridge") within the State of New York was conveyed to it in or before 1788 and then unlawfully conveyed out of its possession in a series of transactions and takings from 1818 to 1842.  Am. Compl. ¶¶ 4, 12, 16-18, 21-23, 25-40, 42, 46, 49.  Roughly 7.25 acres of that tract, composing a right-of-way for New York State Route 46, is excepted from Plaintiff's claims.  Id. ¶ 12.  The only land that was still claimed by the State Defendants when Plaintiff filed its Amended Complaint is a roughly .91-acre parcel.  Id.; see Dkt. No. 295 ("Response to Government Motions") at 2 & n.5.

In its most recent filings, Plaintiff clarified that it "asserts no claims against the State itself" and, as to the .91-acre parcel, "seeks only to pursue an ejectment claim for future possession of land against State officers in their individual capacities."  Resp. to Gov't Mots. at 2.[2]  Additionally, as to the Oneidas, Plaintiff "abandons any claim based on the illegality of the original transfer, including its second claim for relief under the Nonintercourse Act, 25 U.S.C. § 177."  Dkt. No. 288 ("Response to Oneidas' Motion") at 3.[3]  Plaintiff otherwise seeks declarations that the Oneidas' interests in the subject lands were extinguished in 1788, that the transfers of the subject lands to the State of New York were void, and that Plaintiff's Indian title has never been extinguished and

---

[1] In resolving the Motions to dismiss, the Court takes the factual allegations in Plaintiff's Amended Complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] Plaintiff's claims against the State of New York and the New York State Department of Transportation are therefore dismissed.

[3] Citations to Plaintiff's Response to the Oneida Motion use the document's internal page numbers and not the numbers electronically affixed to the top of the document.

2

confers on Plaintiff a valid right of current possession, along with an order restoring possession and awarding damages and disgorgement of unjust benefits accrued by Defendants. Am. Compl. at 16-17.

## III. SOVEREIGN IMMUNITY

### A. State Defendants

*1. Legal Standard*

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," including Native American tribes. U.S. Const. amend. XI; see Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 782 (1991). "The 'state' for purposes of the Eleventh Amendment generally includes state agencies and state officials sued in their official capacities, but not political subdivisions." Riley v. Town of Bethlehem, 44 F. Supp. 2d 451, 457 (N.D.N.Y. 1999) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). In Ex Parte Young, 209 U.S. 123 (1908), the U.S. Supreme Court "carved out a 'narrow exception to the general rule of Eleventh Amendment immunity from suit.'" Murray v. New York, 585 F. Supp. 2d. 471, 472 (W.D.N.Y. 2008) (quoting Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 438 (2004)). Under this exception, "'a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law.'" State Emps. Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (quoting In re Deposit Ins. Agency, 482 F.3d

612, 617 (2d Cir. 2007)).[4]

"In determining whether the doctrine of Ex Parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (alteration and internal quotation marks omitted). "[A]n *allegation* of an ongoing violation of federal law is sufficient for purposes of the Young exception." In re Deposit Ins. Agency, 482 F.3d at 621 (citing Verizon Md., 535 U.S. at 646). "[The] inquiry concerning such allegations is limited to whether the alleged violation is a substantial, and not frivolous, one; [a court] need not reach the legal merits of the claim." Id. (citing In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 374 (2d Cir. 2005)). A party may sue

---

[4] The locution "individual capacity" can generate confusion because it is ambiguous as between "official capacity" in the context of an Ex Parte Young suit for prospective equitable relief and "personal capacity" in the context of a suit for damages. Compare, e.g., Papasan v. Allain, 478 U.S. 265, 278 n.11 (1986) ("When a state official is sued and held liable in his *individual* capacity, . . . even damages may be awarded."), and Kentucky v. Graham, 473 U.S. 159, 165 n.10 (1985) ("Personal-capacity actions are sometimes referred to as individual-capacity actions."), and id. at 171 ("[T]he Court's Eleventh Amendment decisions required this case [under 42 U.S.C. § 1988] to be litigated as a personal-capacity action . . . ."), with Papasan, 478 U.S. at 277 ("[An] official, although acting in his official capacity, may be sued in federal court [under Ex Parte Young]."), and Murray, 585 F. Supp. 2d at 472 ("[T]he requirement for suing state officials in their individual capacities [as opposed to the state itself] is an essential element of the Ex Parte Young doctrine." (quoting Saltz v. Tenn. Dep't of Emp't Sec., 976 F.2d 966, 968 (5th Cir. 1992) (second alteration in original) (internal quotation marks omitted))), and id. ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." (quoting In re Deposit Ins. Agency, 482 F.3d at 618) (internal quotation marks omitted)). Because Plaintiff "seeks only to pursue an ejectment claim for future possession of land against State officers in their individual capacities" on the theory of Ex Parte Young, the Court construes Plaintiff's references to "individual capacity" as references to "official capacity." Resp. to Gov't Mots. at 2. The distinction is important because "[i]n an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." Graham, 473 U.S. at 166 n.11 (citing FED. R. CIV. P. 25(d)(1); FED. R. APP. P. 43(c)(1); SUP. CT. R. 40.3).

4

under Ex Parte Young to stop a present and continuing violation of federal law that is premised on past state actions, but cannot obtain relief that would be tantamount to an award of damages for those past actions. See Papasan v. Allain, 478 U.S. 265, 278, 281 (1986); State Emps. Bargaining Agent Coalition, 494 F.3d at 97-98.

  *2. Discussion*

Here, Plaintiff alleged in its Amended Complaint, as clarified in its subsequent filings, that Defendants the Governor of New York and the New York State Commissioner of Transportation possessed a .91-acre parcel of land to the exclusion of Plaintiff in violation of federal common law, treaty, and statute. Am. Compl. ¶¶ 45-52; Resp. to Gov't Mots. at 2 & n.5. Plaintiff also indicated, however, that it was informed in 2010 that New York no longer held the parcel in question. Resp. to Gov't Mots. at 2 n.5. Given New York's apparent release of the disputed land in 2010, Ex Parte Young cannot support Plaintiff's claim because the alleged violation of federal law by the relevant state officials necessarily has ceased. There is therefore no basis for a prospective ejectment action against those officials. Independent action of the parties has already wrought what Plaintiff sought to achieve through court order. Accordingly, Plaintiff's claims against the Governor of New York and the New York State Commissioner of Transportation are barred by the Eleventh Amendment and therefore dismissed.[5]

---

[5] Plaintiff refers to the general principle that jurisdiction is determined at the time the suit is filed, but the Court is aware of no authority applying that principle in the context of an Ex Parte Young action. The cases Plaintiff cites involve, instead, statutory waivers of sovereign immunity. See Resp. to Gov't Mots. at 2 n.5. Nor is the general principle absolute even when it applies. See, e.g., Kabakjian v. United States, 267 F.3d 208, 212 (3d Cir. 2001) (observing that diversity jurisdiction can be destroyed subsequent to filing and that "[s]ubsection (e) of the Quiet Title Act can be read to provide that the government can, after suit is filed, sell the property in issue and thereby divest the district court of jurisdiction."). For the reasons stated *supra*, the Court concludes that the circumstances of this case compel a finding that sovereign immunity bars Plaintiff's claim

**B. Oneidas**

   *1. Legal Standard*

"As a matter of federal common law, an Indian tribe enjoys immunity from suit except where 'Congress has authorized the suit or the tribe has waived its immunity.'" Garcia v. Akwesasne Hous. Auth., 268 F.3d 76, 84 (2d Cir. 2001) (quoting Kiowa Tribe v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998)). "A waiver of tribal sovereign immunity must be 'clear.'" Cayuga Indian Nation of N.Y. v. Seneca Cnty., 890 F. Supp. 2d 240, 248 (W.D.N.Y. 2012) (quoting Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991)); accord Garcia, 268 F.3d at 86 (citing C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla., 532 U.S. 411, 418 (2001)). Waivers of sovereign immunity are construed narrowly in favor of a sovereign, see Lane v. Peña, 518 U.S. 187, 192 (1996); Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1245 (8th Cir. 1995); Seneca-Cayuga Tribe of Okla. v. Oklahoma ex rel. Thompson, 874 F.2d 709, 715 (10th Cir. 1989), and the terms of a waiver "define that court's jurisdiction to entertain the suit." United States v. Testan, 424 U.S. 392, 399 (1976).

   *2. Discussion*

Plaintiff's original Complaint in this action, filed on October 15, 1986, asserted claims only against the Government Defendants. Dkt. No. 1. On or about June 19, 1987, the Oneidas moved to intervene as a defendant "for all purposes." Resp. to Oneidas' Mot. Ex. D. The Court granted the Oneidas' request to intervene on September 25, 1987. Dkt. No. 28; Resp. to Oneidas' Mot. Ex. Z.

---

against the state officials. Moreover, it is unclear whether any claim for ejectment, which is a *legal* remedy, see, e.g., Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 451 (1977), may be asserted under Ex Parte Young, which allows *equitable* relief. See, e.g., Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003) ("There being no valid claim for prospective injunctive relief in the complaint, Ex Parte Young has no application to this case.").

Plaintiff contends that this clear waiver of the Oneidas' sovereign immunity in 1987 as to the claims then being made in the original Complaint also encompasses Plaintiff's present claims against the Oneidas, which Plaintiff added in its Amended Complaint in 2004. See Resp. to Oneidas' Mot. at 22-29. Construing the Oneidas' waiver narrowly in their favor, however, leads the Court to the opposite conclusion. A waiver of sovereign immunity even "for all purposes" includes only claims then at issue in that action, and not other claims that might be added years in the future. Accordingly, Plaintiff's claims against the Oneidas are dismissed on the ground of tribal sovereign immunity.

### IV. **SHERRILL LACHES**

#### A. Legal Standard

Laches is an affirmative defense, see, e.g., Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc., 507 F. App'x 26, 29 (2d Cir. 2013), with a peculiar application—referred to herein as "Sherrill laches" or "the Sherrill defense"—in the context of ancestral land claims such as this. See generally, e.g., City of Sherrill v. Oneida Indian Nation of N.Y., 544 U.S. 197 (2005); Cayuga Indian Nation of N.Y. v. Pataki, 413 F.3d 266 (2d Cir. 2005) (holding laches applicable to ancestral land claims at law even though laches is a defense in equity); Oneida Indian Nation of N.Y. v. County of Oneida, 617 F.3d 114, 127-28 (2d Cir. 2010) (holding that the ancestral-land-claim version of laches does not require the elements of traditional laches). "Three specific factors determine when ancestral land claims are foreclosed on equitable grounds: (1) 'the length of time at issue between an historical injustice and the present day'; (2) 'the disruptive nature of claims long delayed'; and (3) 'the degree to which these claims upset the justifiable expectations of individuals and entities far removed from the events giving rise to the plaintiffs' injury.'" Onondaga Nation v.

New York, 500 F. App'x 87, 89 (2d Cir. 2012) (quoting Oneida, 617 F.3d at 127).

### B. Discussion

Plaintiff "recognizes that if this Court is going to follow the Second Circuit rulings in Cayuga, 413 F.3d 266, and Oneida, 617 F.3d 114, then it will have to dismiss the Tribe's claim against the non-intervenor defendants," and urges the Court to discredit those cases. Resp. to Gov't Mots. at 14 (citations truncated). The Court is bound to follow the precedents of a higher tribunal. Plaintiff's claims against the County-Municipal Defendants therefore are dismissed.[6]

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Government Defendants' Motions (Dkt. Nos. 232, 291) to dismiss are **GRANTED**; and it is further

**ORDERED**, that Defendant-Intervenor the Oneida Indian Nation of New York's Motion (Dkt. No. 231) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 228) is **DISMISSED**; and it is

---

[6] As Plaintiff concedes, this conclusion would compel dismissal of Plaintiff's claims against all non-intervenor Defendants; however, Plaintiff retracted its claims against the State of New York and the New York State Department of Transportation as erroneously pleaded, see supra note 2 and accompanying text, and the Court has determined that it does not have jurisdiction over Plaintiff's claims against the Governor of New York and the New York State Commissioner of Transportation. See supra Part III.A. Nor would Plaintiff's claims against the Oneidas fare any better even if the Court had jurisdiction under a waiver of the Oneidas' sovereign immunity. See supra Part III.B. Plaintiff argues that its claims against the Oneidas did not accrue until the Oneidas purchased land in the contested area in the late 1990s and early 2000s, but the dispute has ancient roots and cannot send up new shoots through the salted earth of the Sherrill defense whenever a future purchaser of land in the contested area happens to be the Oneidas. See Resp. to Oneidas' Mot. at 5; cf. Oneida, 617 F.3d at 126 ("[P]ossessory land claims—any claims premised on the assertion of a current, continuing right to possession as a result of a flaw in the original termination of Indian title—are by their nature disruptive and . . . , accordingly, the equitable defenses recognized in Sherrill apply to such claims." (internal quotation marks omitted)).

further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

Dated:   July 23, 2013
         Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge